*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* POMEROY, Minors.

UNPUBLISHED
November 25, 2025
2:00 PM

No. 373146
Kent Circuit Court
Family Division
LC Nos. 22-052568-NA
22-052569-NA

Before: CAMERON, P.J., and REDFORD and GARRETT, JJ.

GARRETT, J. (*dissenting*).

The trial court terminated respondent-mother's parental rights to her children under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), MCL 712A.19b(3)(i) (failure to rectify conditions that led to prior terminations), and MCL 712A.19b(3)(g) (failure to provide proper care or custody). Because the record demonstrates that the Department of Health and Human Services (DHHS) failed to make reasonable efforts to reunify respondent with her children, I would vacate the order terminating respondent's parental rights and remand for further proceedings.

## I. STANDARD OF REVIEW AND LEGAL PRINCIPLES

This Court reviews for clear error the trial court's determination whether the DHHS made reasonable reunification efforts. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022) (quotation marks and citation omitted).

Unless aggravating circumstances exist, the DHHS must make reasonable efforts to reunify a family before seeking termination of parental rights. *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022). "As part of these reasonable efforts, the [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). The service plan must include, among other matters, the services to be provided to

the parent. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). If the child continues in a placement outside the parent's home, the DHHS must update the service plan as necessary throughout the case. *Id*.; see also MCL 712A.18f(5). "The adequacy of the [DHHS's] efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

## II. ANALYSIS

Because respondent's primary barriers were substance abuse, emotional stability, housing, employment, and parenting skills, the DHHS was required to establish a service plan and make reasonable efforts to help respondent address each of these barriers. See *In re Hicks/Brown*, 500 Mich at 85; *In re Sanborn*, 337 Mich App at 258-259. Regarding substance abuse, the DHHS provided respondent with drug screens and referrals to treatment programs that provided substance-abuse counseling and individual therapy. However, the DHHS failed to refer respondent to an alternative, intensive outpatient program when she indicated that inpatient treatment would hinder her ability to keep her full-time job.

The record indicates that, aside from her relapse, respondent met her responsibility to communicate with her caseworker and was proactive by initiating contact with a rehabilitation facility and scheduling a psychological evaluation. See *In re Atchley*, 341 Mich App at 339-340. Respondent's second caseworker, Victoria Darnell, acknowledged respondent's progress toward addressing her issues regarding substance abuse and emotional stability by participating in treatment, providing proof of attendance at support-group meetings, and initiating a psychological evaluation. The parties and the trial court often "lumped together" substance abuse with emotional stability, and the record does not identify specific needs or services provided to respondent to address her emotional stability beyond attending therapy. Notably, respondent's evaluation at the beginning of the case revealed no disorders, and the only recommendation as a result of the evaluation was for respondent to participate in intensive inpatient treatment if she relapsed. However, as stated, the DHHS failed to promptly refer respondent to a suitable alternative for inpatient treatment to enable her to maintain her employment, which was also a barrier to reunification—one that respondent was able to rectify. At the onset of the case, respondent struggled to maintain employment, but, by the time of trial, she had maintained employment for six months and worked up to 55 hours per week, earning approximately $2,000 per month. The trial court opined that respondent's income was sufficient to cover her expenses, with the exception of housing, which respondent still lacked at the time of trial.

The record shows, however, that the DHHS failed to timely assist respondent with housing. Darnell testified that respondent inquired about the status of a housing voucher that the previous caseworker, Paris Strong, indicated she would look into for respondent. Darnell promised to follow up regarding the voucher, but ultimately admitted that she had struggled to ascertain where in the process respondent was with respect to receiving a housing voucher. According to Darnell, it did not appear that Strong otherwise made efforts to assist respondent with housing. After respondent reengaged with services following her relapse, Darnell provided her with a list of landlords and referred her to Health Net, which assists persons searching for housing, but Health Net did not timely respond to the referral. During trial, respondent was residing with her aunt and uncle, but the housing situation was not adequate because of the lack of space. Darnell admitted that she was aware respondent was seeking an expungement of her felony record to enable her to

find suitable housing, but Darnell did not request proof of respondent's efforts to obtain an expungement. Not until the final day of trial did Darnell request documentation about the expungement. After she did so, she received confirmation that respondent was actively making efforts to obtain an expungement and secure better housing.

Regarding parenting skills, the DHHS referred respondent to a parenting program and a trauma-informed course. Respondent completed the trauma-informed course and was halfway through the parenting program by the time of the first dispositional review hearing. Because of the change in caseworkers, it is unclear whether respondent completed the program. In addition, the DHHS referred respondent to a supportive-visitation service. Respondent completed at least 14 of 18 weeks of the program before she was discharged because of absences during her relapse. The DHHS did not reenroll respondent in the program when her parenting time was reinstated, however, purportedly because of the lack of time before trial. The record shows that there exists a dispute regarding the accuracy of this claim. The supportive-visitation coach for the children's father testified that the claim was not accurate and that he would have worked with respondent had he been aware of the situation.

Further, although the testimony regarding respondent's parenting skills throughout the proceedings was mixed, there was substantial testimony that respondent was nurturing, engaging, attentive, and was making progress. There was also testimony that respondent was bonded with the children. Despite the testimony critical of respondent's parenting skills, the DHHS made no referrals for other services to assist her with her parenting skills. The DHHS's failure to provide sufficient services regarding parenting skills was particularly important in this case considering the unique challenges posed by parenting twins.

Therefore, although the DHHS made some efforts to reunify respondent with her children, it often failed to make obvious efforts and, in some instances, any apparent efforts outright. Notably, while respondent's emotional stability was a persistent barrier to reunification, the DHHS did not make referrals or recommendations to address a specific issue regarding respondent's emotional stability, and the trial court's decision fails to indicate how respondent's emotional stability was lacking at the time of termination. Although the agency is not required to make all possible efforts toward reunification, the record indicates that the DHHS's efforts fell short of its reasonable-efforts obligation. See *In re Sanborn*, 337 Mich App at 258; *In re Newman*, 189 Mich App at 68-70. Because the trial court clearly erred by finding that reasonable efforts were made to reunify respondent and her children, I would vacate the trial court's order terminating respondent's parental rights and remand for further proceedings.

/s/ Kristina Robinson Garrett